UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                    **MEMORANDUM & ORDER**
      - against -                                                     03-CR-970 (PKC)

EDMUND BOYLE,

                       Defendant.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Before this Court is *pro se* Defendant Edmund Boyle's ("Defendant") request for a reduction in his sentence pursuant to the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)" or the "compassionate release statute"). (Second Mot. for Compassionate Release, Dkt. 451 ("Def.'s Br.")) This is Defendant's second motion for a sentence reduction, arguing substantially the same grounds as before. For the reasons set forth herein, Defendant's motion is denied.

## BACKGROUND

On March 21, 2005, Defendant was convicted of eleven racketeering offenses in connection with his participation in a criminal organization called the "Boyle Crew" (also known as the "Night Drop Crew"), for a string of burglaries of night deposit boxes at various banks in New York, New Jersey, and Wisconsin in connection with a larger enterprise. (*See* Transfer Order, Dkt. 428, at 2; *see generally* Jury Verdict, Dkt. 231.) On July 25, 2005, the then-presiding judge, the Honorable Sterling Johnson, Jr., sentenced Defendant to 151 months' imprisonment ("EDNY

Sentence"). (J. of Conviction, Dkt. 258, at ECF 2.[1]) On April 18, 2008, Defendant received 33 months' credit against his sentence for the time he had already served in state custody, reducing the remaining amount of time Defendant had to serve on his EDNY Sentence to 118 months. (Dkt. 299.) Meanwhile, in a separate prosecution in the Southern District of New York ("SDNY") in 2010, Defendant was convicted of conspiracy to commit racketeering and was sentenced by the Honorable Colleen McMahon to a term of 240 months, ("SDNY Sentence"), to be served consecutively after serving his EDNY Sentence. *See United States v. Boyle*, No. 08-CR-523 (CM) (S.D.N.Y. Nov. 17, 2010), Dkt. 98 at ECF 2. Defendant began serving his EDNY Sentence in September 2005. (Gov't Opp'n Second Mot., Dkt. 453 ("Gov't Opp'n"), at 2 (citing Public Information Inmate Data by the Bureau of Prisons).) He finished serving his EDNY Sentence at the latest by July 2015 and then commenced his SDNY Sentence, which he is still serving today. (*Id.*)

On March 11, 2021, Defendant filed his first motion for compassionate release, arguing that the excessive length of his consecutive sentences, the 22 years he had already spent in prison, as well as his severe asthma were all factors that warranted a reduction in his EDNY Sentence. (First Mot. for Compassionate Release, Dkt. 411, at 3–4.) The Government opposed the motion. (Gov't Opp'n to First Mot., Dkt. 413.) On November 23, 2021, Judge Johnson ordered Defendant's motion to be transferred to the SDNY, (*see* Transfer Order, Dkt. 428 ("EDNY Transfer Order")), finding that this Court did not have jurisdiction to intervene or grant the requested relief because Defendant had already completed his EDNY Sentence. (EDNY Transfer Order at 4–5.)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Upon the transfer of his first compassionate release motion to the SDNY, Defendant voluntarily withdrew the motion pending before that court, choosing instead to appeal the EDNY Transfer Order on December 15, 2021. (*See* Notice of Appeal, Dkt. 429); *see also Boyle*, No. 08-CR-523 (CM) (S.D.N.Y. Nov. 17, 2010), Dkt. 137. The Second Circuit denied Defendant's appeal of the EDNY Transfer Order for lack of jurisdiction over interlocutory orders pursuant to 28 U.S.C. § 1291. (Dkt. 433.)

Following the dismissal of his appeal before the Second Circuit, Defendant submitted a request to this Court to issue a "final order" on his motion for compassionate release. (Dkt. 434.) Judge Johnson construed Defendant's request as a motion for reconsideration of the EDNY Transfer Order and denied the motion on September 30, 2022, for failure to cite any reasons for reconsideration. (*See* Recon. Order, Dkt. 436.)

Instead of appealing Judge Johnson's denial of reconsideration or refiling a compassionate release motion in the SDNY, Defendant chose to file the instant Second Motion for Compassionate Release in this Court on August 23, 2023. (Def.'s Br. at 1.) The Government filed its opposition on November 2, 2023. (Gov't Opp'n at 1.) Defendant filed his reply on November 16, 2023. (Dkt. 454 ("Def.'s Reply"), at 1.)

## LEGAL STANDARD

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Applewhite*, No. 17-CR-142 (MKB), 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). One such statutory exception is provided in 18 U.S.C. § 3582, the vehicle for defendants

seeking "compassionate release" from sentences.[2] Originally, only the Bureau of Prisons ("BOP") could act on a motion for relief under this section, exercising "absolute control over th[e] mechanism for lenity[]." *Brooker*, 976 F.3d at 231. However, the First Step Act ("FSA") modified § 3582 to permit a district court to modify a defendant's sentence upon a showing that (1) he has satisfied the statutory exhaustion requirement, (2) "extraordinary and compelling reasons warrant such a reduction," (3) a sentence reduction is appropriate after considering all applicable factors in 18 U.S.C. § 3553(a), and (4) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5239. It is defendant's burden to show he is entitled to a sentence reduction. *See United States v. Lugo*, No. 01-CR-922 (NG), 2022 WL 732153, at * 7 (E.D.N.Y. Mar. 11, 2022).

When considering a motion for compassionate release, the FSA "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in [such] motions." *Brooker*, 976 F.3d at 237 (finding that "[b]ecause [Sentencing] Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"); *see also United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (explaining that the district court has the authority to "determine what 'Other Reasons' (as that term is used in Application Note 1(D)) qualify as 'extraordinary and compelling' regardless of the BOP's view

---

[2] "It bears remembering that compassionate release is a misnomer," as the section "in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). In granting a motion, a district court "could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." *Id.*

on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (quoting 28 U.S.C. § 994(t) (emphasis added)).

## DISCUSSION

**I.     This Court Cannot Reduce Defendant's SDNY Sentence Under Section 3582(c)(1)(A)**

A request for a sentence reduction or for compassionate release under 18 U.S.C. § 3582 must be made to the sentencing court that imposed that sentence. *See United States v. Avery*, 807 F. App'x 74, 77 (2d Cir. 2020); *United States v. De Jesus Sierra*, No. 10-CR-416 (VM), 2021 WL 354954, at *3 (S.D.N.Y. Feb. 2, 2021) (explaining that "Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the *sentencing* judge jurisdiction to consider a defense motion for Reduction in Sentence (RIS or 'Compassionate Release')" (emphasis added)); *Dov v. Bureau of Prisons*, No. 20-CV-4343 (SLC), 2020 WL 3869107, *3 (S.D.N.Y. July 9, 2020) (denying compassionate release where the sentencing judge, in another district, had previously denied a motion for compassionate release under Section 3582(c)(1)(A), noting that "such a request must . . . be made to the sentencing court" and the petitioner "made that application, which [the sentencing judge] considered and denied"); *Castelle v. Pullen*, No. 22-CV-297 (KAD), 2022 WL 4448898, at *4 (D. Conn. Sept. 23, 2022) (holding that the court lacked jurisdiction to consider petitioner's compassionate release request because the sentencing court was the SDNY).

Here, Defendant does not dispute that he has finished serving his EDNY Sentence and is currently in custody because he is still serving his SDNY Sentence. (Def.'s Reply at 3 ("Although I have already finished serving my first term of incarceration, my interest in a sentence reduction remains 'concrete' because a reduction would accelerate the date on which I will finish serving

my consecutive sentence in the SDNY . . . case.").)  Thus, to the extent that Defendant requests that this Court grant him a sentence reduction or compassionate release of his SDNY Sentence, this Court plainly lacks jurisdiction to consider his request.  Indeed, Defendant retains the right to renew his motion for compassionate release before Judge McMahon in the SDNY, but as noted, has chosen not to do so.  *See Boyle*, No. 08-CR-523 (CM) (S.D.N.Y. Nov. 17, 2010), Dkt. 138 (memo endorsement of Defendant's request to withdraw his motion without prejudice, stating "Defendant's motion is deemed withdrawn.").

**II.    Retroactive Reduction of Defendant's EDNY Sentence Under Section 3582(c)(1)(A)**

But Defendant is not asking this Court to reduce his SDNY Sentence.  Rather, Defendant is seeking to have this Court *retroactively* reduce Defendant's already-served EDNY Sentence.  Defendant offers several arguments for why this Court has jurisdiction under Section 3582(c)(1)(A) to do so.  First, Defendant argues that *United States v. Martin*, 974 F.3d 124 (2d Cir. 2020), which Judge Johnson relied on in denying Defendant's first motion for compassionate release and his motion for reconsideration, does not address compassionate release motions under Section 3582(c)(1)(A).  Second, Defendant points to the Seventh Circuit's holding in *United Stated v. Von Vadar*, 58 F.4th 369 (7th Cir. 2023), to argue that, even assuming the First Step Act's amendment to Section 3582(c)(1)(A) does not explicitly grant this Court the authority to retroactively reduce Defendant's EDNY Sentence, the Court still has the jurisdiction to do so because Defendant presents a live case and controversy with the possibility of effectual relief.  The Court considers each of Defendant's arguments in turn.

   **A. The *Martin* Case**

In *Martin*, a 2020 case before the Second Circuit, the defendant was sentenced to 150 months based on his conviction for conspiring to distribute 50 grams or more of crack cocaine.  974 F.3d at 128–29.  After completing his 150-month sentence, but while still in custody serving

two additional sentences arising from crimes he had committed in prison, Martin sought a retroactive sentence reduction of his 150-month sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) ("Section 3582(c)(1)(B)"), which "permits modification of a sentence to the extent 'expressly permitted by statute.'" *Martin*, 974 F.3d at 137 (quoting Section 3582(c)(1)(B)). The statute on which Martin relied for his reduction request was Section 404(b) of the FSA ("Section 404(b)"), which authorizes a court to "impose a reduced sentence" based on the retroactive application of the Fair Sentencing Act of 2010.[3] As part of its analysis, the Second Circuit studied the plain meaning of Section 404(b) to determine whether the statute "expressly" permits the reduction that Martin requested to his already-served sentence, as required by Section 3582(c)(1)(B). *Id*. at 134. The panel concluded, "[i]t does not." *Id*. at 138–39. In particular, the panel found that because Section 404(b) "permits only the 'imposition of a reduced sentence,' . . . [the Court] cannot . . . imply an authorization to reduce a term of imprisonment that has already been served." 974 F.3d at 138 (reasoning that the "act of imposing something means to 'levy or exact,' . . . to 'establish or apply by authority,' or 'bring about as if by force'" and that it "makes little sense to place a 'reduced' burden or restriction where no burden or restriction exists"). The *Martin* court also reasoned that:

> To the extent we presume Congress legislates with familiarity of the legal backdrop for its legislation, . . . it makes sense to look to an analogous resentencing proceeding for guidance: 18 U.S.C. § 3582(c)(2), which permits modification of a term of incarceration based on a retroactive change to the Sentencing Guidelines. Comparing the long history of caselaw fleshing out the details and mechanics of

---

[3] The Fair Sentencing Act of 2010 generally reduced the mandatory minimum sentences applicable to offenses relating to the distribution of crack cocaine. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372, 2372 (amending 21 U.S.C. § 841(b)(1)). The Fair Sentencing Act, however, did not apply retroactively to defendants sentenced before the Act took effect. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). In 2018, Congress passed the First Step Act, which permitted a district court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See Martin*, 974 F.3d at 131.

section 3582(c)(2) with the relatively light amount of caselaw dealing with section 3582(c)(1)(B), and the fact that many courts consider only a few statutes to fall under the express authorization of section 3582(c)(1)(B), . . . we find it unlikely that Congress sought to substantially depart, without saying so, from otherwise settled presumptions regarding the resentencing context. Thus, it is helpful to look at the parallels between section 3582(c)(2) and the First Step Act to resolve background questions regarding the mechanics of the First Step Act like the question presented by Martin's motion. Examining the cases interpreting section 3582(c)(2) and presuming that Congress legislated section 404(b) with a recognition of that resentencing regime supports that Congress did not seek to implicitly grant courts authority to modify sentences that have already been served.

*Id.* at 139 (citations omitted).

Finally, as discussed more later, the *Martin* panel found that the aggregation of multiple sentences pursuant to 18 U.S.C. § 3584(c) ("Section 3584(c)") "does not operate to create a live case or controversy" that empowers a district court to modify a sentence that has already been served. *Id.* at 130, 136–41.

Based on this exhaustive analysis, the Second Circuit concluded in *Martin* that Section 404(b) of the FSA neither expressly nor impliedly permits modification of an already-served sentence. *Id.* at 139 ("[A]bsent any suggestion that Congress intended to upend the structure of resentencing proceedings, or to use the terms appearing in section 404(b) in a novel fashion, we cannot read into the statute the authorization to grant the relief Martin requests.").

Here, when Defendant filed his first motion for compassionate release in March 2021, he argued that "[b]oth the [FSA] and [Section 3582(c)(1)(A)] are silent as to whether and when a court may consider a motion for resentencing brought by a defendant who has completed his initial custodial sentence." (Def.'s Reply First Mot. Compassionate Release, Dkt. 411, at 1.) However, relying on *Martin*, Judge Johnson found that this Court lacked the jurisdiction to grant the requested sentencing reduction, and transferred Defendant's motion to the SDNY. (*See* EDNY Transfer Order at 4 ("[A]n inmate like [Boyle]—who has served the entirety of his

8

sentence . . . cannot obtain effectual relief through a favorable judicial decision authorized by the First Step Act.") (quoting *Martin*) (alternation in original)); *see also* 974 F.3d at 130.  Defendant urged Judge Johnson to reconsider his Transfer Order, arguing that the Supreme Court's decision in *Concepcion v. United States*, 597 U.S. 481 (2022), undercut the holding of *Martin*.  (*See* Def.'s Mot. Recon., Dkt. 434, at ECF 2.)  Once again, after considering Defendant's argument regarding the applicability of *Martin* to this case, Judge Johnson denied reconsideration, emphasizing that *Concepcion* involved a defendant's motion to modify a sentence he was *currently* serving for conviction of a "covered offense" under the FSA, not an *already-served* sentence.  (Recon. Order, Dkt. 436, at 5.)

Defendant now raises a new argument as to why the Court should sidestep *Martin*, contending that *Martin*'s holding should be limited to motions under Section 404(b) of the FSA—brought pursuant to Section 3582(c)(1)(B)—and should not be applied to the instant compassionate release motion, which is brought under Section 3582(c)(1)(A).  (Def.'s Br. at 5.)  In response, the Government asserts that *Martin* stands for the general principle that "the First Step Act does not permit retroactive modification of sentences that have already been served" and that "*Martin's* statutory analysis looks in part to the prefatory language of § 3582(c), which would apply equally to motions brought under §§ 3582(c)(1)(A) and (c)(1)(B)."  (Gov't Opp'n at 3–4.)[4]

---

[4] The Court also notes that Defendant may have failed to fully exhaust all administrative remedies before filing his compassionate release motion.  (*See* Def.'s Br. at 11–12 (noting that the BOP asked Defendant to resubmit his compassionate release form because he had not specified an extraordinary or compelling reason for the motion, but failing to mention if Defendant did so).)  The Government, however, does not raise this argument and has therefore waived it.  *See United States v. Saladino*, 7 F.4th 120, 122, 124 (2d Cir. 2021) ("The exhaustion requirement in § 3582(c)(1)(A) is not a jurisdictional limitation. . . . Rather, [it] is a 'claim-processing rule[ ]' and accordingly 'may be waived or forfeited.'").

9

Defendant is correct that *Martin* does not directly analyze compassionate release motions brought under Section 3582(c)(1)(A), which authorizes courts to "reduce the [defendant's] term of imprisonment." *See* 18 U.S.C. § 3582(c)(1)(A). This is different than the language of the relevant statute in *Martin*, Section 404(b) of the FSA, which permits a court to "impose a reduced sentence." *See* First Step Act, § 404(b), Pub. L. No. 115-391, 132 Stat. 5222 (Dec. 21, 2018). Keying in on this phrase, the *Martin* court held that because Section 404(b) "permits only the 'imposition of a reduced sentence,' . . . [the Court] cannot . . . imply an authorization to reduce a term of imprisonment that has already been served." 974 F.3d at 138 (reasoning that the "act of imposing something means to 'levy or exact,' . . . to 'establish or apply by authority,' or 'bring about as if by force" and that it "makes little sense to place a 'reduced' burden or restriction where no burden or restriction exists"). By contrast, the language in Section 3582(c)(1)(A) authorizing a court to "reduce [a defendant's] term of imprisonment" could be interpreted as empowering a court to reduce any sentence that the defendant is currently serving. Furthermore, the requirement that the retroactive relief sought must be "expressly" permitted by the statute supporting the compassionate release request (*e.g.*, Section 404(b))—emphasized in the *Martin* court's reasoning, *see* 974 F.3d at 140—derives from the language of Section 3582(c)(1)(B) and does not apply to compassionate release motions under Section 3582(c)(1)(A).

Despite these differences, *Martin* is nonetheless instructive because, as discussed, it looked to Section 404(b) of the FSA and the pre-existing resentencing regime of Section 3582(c)(2) in determining the procedure and standards to be used under the First Step Act. Specifically, courts must apply the Sentencing Guidelines' policy statements to Section 3582(c)(2) motions. As relevant here, one of those policy statements provides: "In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."

10

U.S.S.G. § 1B1.10(b)(2)(C).  Indeed, the *Martin* court found that this requirement evidenced Congress's "strong rejection of [retroactive] relief under § 3582(c)(2)."  974 F.3d at 140; *see also id.* at 136 (citing *United States v. Llewlyn*, 879 F.3d 1291, 1295 (11th Cir. 2018) (finding moot a motion made under § 3582(c)(2) to reduce a sentence that had already been served where inmate remained imprisoned due to later consecutive sentences imposed for offenses committed while serving original sentence)).  As previously noted, the panel further presumed that "Congress legislated [the First Step Act] with a recognition of [Section 3582(c)(2)'s] resentencing regime."  *Id.* at 139–140.  Notably, though the *Martin* court acknowledged that, "motions made under the First Step Act are not subject to [] policy statements [prohibiting the reduction of sentences to less than time served]," it nevertheless applied the same principle to such motions: "We find it difficult to believe that Congress intended to create two disparate resentencing regimes that would have the effect of treating similarly situated inmates differently, and that Congress did so without any express statement conveying such an intent."  *Martin*, 974 F.3d at 139–40.

Here, the same reasoning can be readily applied to compassionate release motions brought under Section 3582(c)(1)(A).  As with Section 404(b) of the FSA, Congress was legislating changes to the compassionate release statute "with familiarity of the legal backdrop for its legislation," which included motions brought under Section 3582(c)(2).  *Id.* at 139 (quoting *Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018)).  The Court agrees that "it would seem a stretch to infer that Congress intended to substantially depart from those settled mechanics [of resentencing regimes] without expressing that intent."  *Id.* at 140.  Indeed, the *Martin* court emphasizes that Section 404(b)'s language "impos[ing] a reduced sentence . . . closely mirrors § 3582(c)(2)'s grant of authority to 'reduce the term of imprisonment,'" thereby arguing that it was thus "more likely that Congress was adopting, rather than departing from, established

11

assumptions about how our legal or administrative system works." *Id.* at 140.  The language of Section 3582(c)(1)(A)—allowing this Court to "reduce the [defendant's] term of imprisonment"—is identical to that of Section 3582(c)(2).  Thus, while *Martin* does not speak directly on compassionate release motions under Section 3582(c)(1)(A), the panel's reasoning is nevertheless instructive for this Court in concluding that a retroactive reduction of an already-served sentence is not authorized by Section 3582(c)(1)(A).

### B. The *Von Vader* Case

Defendant further argues that even if "a retroactive reduction is unauthorized by statute," as the Seventh Circuit assumed in *Von Vader*, 58 F.4th at 371, "the fact that a given request may fail on statutory grounds does not defeat the existence of an Article III controversy." *Id.*

In *Von Vader*, a 2023 case before the Seventh Circuit, the defendant was sentenced to 270 months' imprisonment after pleading guilty to distributing methamphetamine in the Western District of Wisconsin. *Id.* at 370.  He was subsequently sentenced to 10 years after pleading guilty to possessing heroin while in prison in the District of Kansas. *Id.*  The defendant moved for a reduction in his sentence pursuant to Section 3582(c)(2). *Id.*  Before the Seventh Circuit, the government argued that "the Western District of Wisconsin itself lacked jurisdiction to consider Von Vader's application.  That is because his 2000 sentence ha[d] expired and custody now depend[ed] on the 2012 sentence.  [Moreover,] § 3582(c) does not authorize release from an expired sentence, which ma[de] Von Vader's application in Wisconsin moot." *Id.* at 371.  The Seventh Circuit rejected this argument, stating:

> Relief is possible if Von Vader is right on the law. The judge in Wisconsin could order the Bureau of Prisons to treat the Wisconsin sentence as if it had expired earlier and to reduce the time remaining on the Kansas sentence accordingly. Or the court in Wisconsin could make an adjustment in the length of supervised release, on the Wisconsin sentence, that will follow the conclusion of the Kansas sentence.

12

*Id.*  Here, Defendant similarly argues that though he has "already finished serving [his] first term of incarceration, [his] interest in a sentence reduction remains 'concrete' because a reduction would accelerate the date on which [he] will finish serving [his] consecutive sentence in the SDNY[] case."  (Def.'s Reply at 3.)  Thus, Defendant argues, since the Court may still grant him "effectual relief," it may find that it has jurisdiction to consider his motion even absent authorization from the compassionate release statute.

As a threshold matter, opinions of the Seventh Circuit are not binding on this Court.[5]  *United States v. Kelly*, 609 F. Supp. 3d 85, 131 (E.D.N.Y. 2022) (explaining that district courts are "bound to follow controlling Second Circuit precedent unless that precedent is overruled or reversed").  In any case, even considering *Von Vader* on its merits, the Court is not persuaded that its holding applies to the present motion.  Defendant's theory of how a positive adjudication of his motion would affect his SDNY Sentence is similar to the argument that the Second Circuit considered and rejected in *Martin*.  *See* 974 F.3d at 143 ("Martin argues that effectual relief is possible because the imposition of a reduced sentence . . . would have the effect of having caused him to over-serve his sentence for [that Count]; thus, the additional time he spent in prison may be credited towards the two 12-month terms of imprisonment he continues to serve, and granting his motion would result in his immediate release.").  There, the *Martin* court looked to the Congressional intent behind aggregating sentences pursuant to Section 3584(c), and concluded: "The fact that granting retroactive relief would affect another sentence that was aggregated for administrative purposes does not operate to create a live case or controversy." *Id.* at 130.  While it is true that a criminal case does not "necessarily become moot when [an] [inmate] finishes

---

[5] The other out-of-circuit district court decisions Defendant cites to, including *United States v. Nance*, No. 08-CR-0449, 2019 WL 2436210 (D. Neb. June 10, 2019) and *United States v. Mazzini*, 487 F. Supp. 3d 1170 (D.N.M. 2020), are similarly not binding on this Court.

13

serving the sentence," it will only remain a live case or controversy if there exists "some concrete and continuing injury or collateral consequence resulting from the conviction." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (internal quotation marks omitted). However, a "challenge to the length of a completed sentence does not present a live controversy solely by virtue of its collateral effect or consequence on future sentencing." *Martin*, 974 F.3d at 141 (citing *United States v. Suleiman*, 208 F.3d 32, 36 (2d Cir. 2000)). Where courts decline to presume the existence of collateral consequences, the inmate seeking to challenge an already-completed sentence "bears the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy." *Id.* (quoting *Mercurris*, 192 F.3d at 294).

Here, just as in *Martin*, none of the different situations in which crediting time served is appropriate are applicable to Defendant. Defendant's term of imprisonment has not been partially vacated, nor is he claiming that he was unlawfully sentenced to his initial imprisonment. Further, Defendant does not contend that he has been unlawfully convicted of the same offense in both the SDNY and EDNY.[6] Moreover, as previously noted, Defendant has already received 33 months' credit against his EDNY Sentence for the time he had already served in state custody. (Dkt. 299.) Therefore, this Court finds no justification for departing from the precedent set in *Martin*, and

---

[6] Defendant was convicted of violating 18 U.S.C. § 1962(d) in both the SDNY and EDNY, but the convictions do not pertain to the same facts or conduct. *Compare United States v. Boyle*, No. 08-CR-523 (CM) (SDNY), Indictment, Dkt. 29, *with United States v. Boyle*, 03-CR-970 (EDNY), Dkt. 29, Indictment, Dkt. 206. Moreover, while Defendant argues that his SDNY charges included "the same bank burglary charges" as in the EDNY case, he does not allege that he was convicted of the same offense in violation of the Double Jeopardy clause. (Def.'s Reply at 8.)

rejects Defendant's argument that his circumstances give rise to a live case or controversy even absent authorization from the statute.[7]

## CONCLUSION

For the reasons set forth above, Defendant's motion for a reduction in his sentence is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 20, 2024
         Brooklyn, New York

---

[7] Since the Court finds that it lacks jurisdiction, it is not necessary to consider Defendant's arguments on the merits, including his arguments on rehabilitation, sentencing disparities relative to co-defendants, and the length of time already served.